May it please the court, I'm Wanda Anderson Davis. I represent Luis Sanchez. On behalf of my client, Mr. Sanchez, I would like to thank this honorable court for granting us the opportunity to have oral arguments in this case. I'd just like to give you a little background about who Luis Sanchez is, and I know that this case is not about the facts, but I think it's important to know who my client is. Luis Sanchez is a Hispanic male. He was born in Puerto Rico and an unincorporated territory of the United States, so he's an American citizen. Yet from 2008 to 2017, he was subjected to discriminatory statements as though he were not an American citizen, and it just got worse and worse. And between 2009 and 2017, he was subjected to people using racial slurs against him. His environment became so extremely hostile that he had to file complaints with the employer. He complained of discrimination. He complained of harassment, but it went on deaf ears. Mr. Sanchez is a pilot. He had 16 years of experience when he came to this job, yet he was degraded time and time again. He was called such things as Dirty Sanchez, which he interpreted meant the color of his skin meant that he was dirty. He was constantly questioned about his citizenship. He was asked questions about when were you naturalized. He was degraded and indicated that he was part of the Puerto Rican mafia. Your Honors, Mr. Sanchez underwent this as long as he possibly could, but when he complained to Glenn Nave, the senior pilot, he ridiculed him and called him thin-skinned for making such complaints and ultimately retaliated against him. On August the 25th of 2017, Mr. Sanchez filed an EOC complaint. Upon receipt of that EOC complaint, which was on September the 8th of 2017, Chevron got that notice of charge and by October the 30th of 2017, Mr. Sanchez was notified that he was going to be dismissed as an employee of Chevron. You have limited time, so just if you want to turn to telling us why the district court was wrong. Yes, yes, Your Honor, I will. Thank you. Your Honor, as I was about just to say, that the facts in this case are extremely extensive. However, this case is really about the district court dismissing this case on November the 12th of 2020. Your Honor, the plaintiff respectfully submits that the main reason for dismissal of this case was that the court directed the defendant, I'm sorry, the plaintiff to reduce the size of its complaint. Your Honor, the complaint had been amended three separate times as in the original complaints. There are four versions of the complaint. Each time that this case went before the court, the court actually said, expound, tell me more, tell me who are the supervisors, tell me what each supervisor did. And so, Your Honor, I continue to obey every directive that was given by Magistrate Judge North. He told me things like . . . Practiced in his court ever before? I have practiced in this court before, Your Honor. Has there ever been before where it's this page limits and this sort of management of the complaints to this degree? Your Honor, in his court nor no other court have I ever been subjected to the page management. And I understood his order as it related to page management to deal with Federal Rule of Civil Procedure 8A.2, whereby he told me to plead certain facts. In fact, the first five items that he identified in this order dealt only with Federal Rule 8A.2. And then he followed that, the five directives that he gave, by saying, do this all in 15 pages or less. So my understanding of that was that I was to plead the facts within 15 pages. I did not understand that the compulsory and mandatory pages that are required by Federal Rule of Civil Procedure 8A.1 and 3, such as jurisdictional statements, a prayer for relief, I did not understand all of that to be included in my 15 pages. I at no time wanted to disregard the directive of the court. I've practiced law since 1985. I've appeared in state and federal courts constantly. I've been a litigator. And at no time do I disregard the directive of a court. Your Honors, there was no disregard intended. And so, therefore, I filed an appeal requesting that this court give this case a de novo review. The de novo review is because the district court failed to apply the proper standard of law in evaluating the hostile work environment case and the retaliation claims. These are questions of law to which I am entitled to a de novo review. The trial court erred in dismissal for violation of the court order's undercourt precedent. Well, the judge, didn't the judge say that he was doing this as a lesser sanction because Chevron, you didn't serve Chevron within the time limits? Your Honor, this is what happened. The judge did give me a lesser, I guess, sentence, if you will call it. I tried to serve Chevron. I tried to follow the rules. I sent them a request for waiver of service. There was no agent for service of process. I looked in practically every state that I could think about that would have had a connection to this company. The client's check, I think, came out of either Texas or California. It wasn't there. I tried everything that I could to find an agent. The defendants actually admitted during the hearing on January the 30th that there is no listed agent for service of process for this employer. So essentially, what Judge Nortz said was that the defendants really didn't come into court with clean hands either. And so I don't think that this case should be dismissed. I think that the case should go forward. I think the breakdown in this case happened because Judge Nortz came to the conclusion that even though this was a hostile work environment case, that the plaintiff should only be pleading things that happened within the one year under really a Title VII case. But I also pled a 1981 case. And so therefore, the plaintiff had four years of pleadings that he could make arguments under. And so, but in respect to the court, when I put, when I did the second, the first supplemental and amending complaint, I took out a lot of the background information and just put in a statement of reservation of right to reserve to be able to bring that information back up. The, um, the court relied on cases such as Gates versus Strain, which is actually a criminal case, arising out of dismissal because there was a clear record of delay. Your Honor, there was no clear record of delay. On the very date that the court set the 90-day rule, that's when I said, I don't know what else to do in this case. So I'm going to serve Chevron and assume that Chevron USA somehow is connected to Chevron production company. And a few days after they received the service, an extension of time was then filed. So the court saw that I, I was proactive. I acted every time the court asked me to, to, to act. The case also is distinguishable from the Jumenville case that the court cited, in which, in that case, the plaintiff allegedly filed a 65-page complaint. The plaintiffs in this case have not filed 65-page complaints. We filed exhaustive complaints, but they were filed because of the fact that this involves a hostile work environment case. I, I, I identified every actor. I advised the court as they requested what the role of that actor was. I advised the court who was in the supervisory capacity. And, um, but the court nevertheless dismissed the case. This case is distinguishable from Hall v. Civil Air Patrol, uh, which is the requirements of Rule 8A and D were, uh, not satisfied in that case. The subheadings of the causes of action in this case were exactly that, Your Honor. There were subheadings. There was one subheading that was incorrect, whereby I included a four-year statute of limitation, um, that should not have been included. Applying the standard, the, uh, appellant pled factual content that allowed the court to draw a reasonable inference that the defendant was liable for the claims. And the second supplemental and amending complaint are contained in paragraphs 24 through 34, record page 315 through 327. In those cases, in those pages, the plaintiff went to Greatland to explain how Glenn Nade, who was the direct supervisor of Luz Sanchez and had authority to hire and participated directly in the harassment in the hostile work environment, or he rubber stamped what was going on. Jeff Pope had supervising authority over Luz Sanchez and participated in promotion decisions regarding Mr. Sanchez. On appeal, the plaintiff identified facts plausibly linking the grievances to the viable claims for relief. The second supplemental and amending complaint in paragraph 25, 25 C, there is a reprimand in paragraph 25 E through G. There are negative employment evaluations in paragraph 25 K through N. The job demotion decrease in work responsibility and the ultimate supporting retaliation is outlined in this case. Davis, let me ask you, you're going through all the things that you think you needed to show. The magistrate gave a very specific direction on the next to the last order, said come in under 15 pages. You say you understood that in my understanding, it might have been an opportunity to make contact with the district judge for clarification of the order, but that apparently wasn't done. Are you challenging, as sort of a general principle, that the magistrate reversibly erred by putting this tight a page limit, or are you relying more on the ambiguity of the order in your mind? Just what are you relying on? Looking at this, I think maybe de novo, but I would say maybe more like an abuse of discretion. Where, I mean, you don't like it, but where is the error that we can grab hold of and actually reverse? Is it the confusion of his order, or is it just putting a page limit at all on you that's too, that's this tight? Your Honor, there are two main responses that I have to give you to that. First, the 15 limit page order, I understand the discretion of the court, but what this court has repeatedly said is that in a hostile environment case that you have to look at the totality of the circumstances, and I think that Judge North was not looking at the totality of the circumstances. I also believe that the time span of hostile work environment was not a substantial enough amount of pages to make that plea, but I actually made it in 14 pages, Your Honor. I pled the facts in 14 and not 15 pages. Everything else, as I said, in the complaint was the compulsory Rule 8, things such as jurisdiction and the order, even though I believe the order was extremely restrictive. All right, thank you. Your Honor, I'd like to, I think I'll reserve my time and discuss the retaliation, but there is a retaliation claim that was completely overlooked. Okay, thank you. Thank you, Your Honor. All right, are you Ms. Rudin? Okay. You were named earlier today, I don't know if you were here yet. I'm sorry? You were called earlier today, I don't know. I did, I thought my husband was here or something. Thank you. May I please the Court? Yeah. Good morning, my name is Skylar Rudin. I represent Chevron North America Exploration and Production Company, the defendant, and appellee in this matter. The District Court's order dismissing the lawsuit should be affirmed for three reasons, Your Honors. First, the District Court was in its discretion under Rule 41B for dismissing the lawsuit for violating the Court's orders three separate times over the course of ten months. Second, and related to the first reason, the Court was within its discretion for dismissing the lawsuit pursuant to Rule 8A. And third, the Court correctly dismissed under Rule 12B6. Today, Your Honors, I'd like to address some of the points raised by plaintiffs, specifically with regards to the first point and the third point with reference to the hostile work environment claim. However, it should be noted that dismissal should be affirmed on any or all of these three reasons. What happened to the retaliation claim? Your Honor, plaintiff claimed that Judge North did not address the retaliation claim. Judge North specifically addressed the retaliation claim in his third order stating that plaintiff's actions against co-workers do not raise a plausible inference that the actual decision makers took any advised employment action against him based on race, national origin, or in retaliation for engaging in protected activity. Unappealed, plaintiff only claims that the Magistrate Judge North erred in not addressing the retaliation claim when his May 8th order specifically addresses the retaliation claim. What's your record page for the comment about retaliation? There are a lot of orders. It starts on 304 is the May 8th 2020 order. Okay. To the first point, first this court should apply the standard of review of abusive discretion. This court has never applied a de novo review under the dismissal of Rule 41B. Dismissal under 41B is appropriate when there's a showing of a clear record of delay or condamnation conduct by the plaintiff or lesser sanctions would not serve the best interest of justice. The court here gave plaintiff three separate opportunities to amend his complaint to address his clear instruction and to comply with Rule 8A. Each time Judge North repeatedly warned plaintiff that dismissal was eminent. While plaintiff only takes issue with the 15 page limitation, there are several other violations of the court orders and Judge North explains each violation at record number 457 through 460. I want to talk about the page limit. I want to hear about the other you're mentioning too, but on the page limit, it seems to me there are a handful of cases allowing those types of page limits, but most of them, I think just about all of them, are before Twombly and Iqbal when all you really did have to do was file a short plain statement of your allegations. So I do wonder if 15 pages, that kind of limit when all these cases are getting thrown out for not offering sufficient detail, is a fair, reasonable limit. Your Honor, 15 pages is reasonable under these circumstances and cases have looked at cases have even limited pages under less compelling circumstances. For example, in Sessarani v. Graham, Do you have the year on that one? Do you know the year? I don't have the year, Your Honor. Go ahead. Plaintiff originally filed a 104 page complaint. It was ordered to file a complaint of no less than 20 pages. Plaintiff filed a 58 page complaint. In its order of dismissal, the District Court noted that it had given Plaintiff the benefit of the doubt, warned him of his 8A violations, and afforded him an opportunity to file a second amended complaint. Here, Plaintiff filed a 19 page complaint when he was specifically ordered to file a 15 page complaint and was given three opportunities and was repeatedly warned that dismissal was imminent. To address Plaintiff's statement on whether the compulsory sections were included in Judge North's order of 15 pages, Judge Southwick, you correctly identified that Plaintiff did not seek clarification of the Court's orders under any circumstance. The Plaintiff did not object or seek clarification. And respectfully, Your Honors, even if we were to accept the excuse that 15 pages did not include the compulsory sections, somehow Plaintiff... Let me ask you about that. Was there a hearing in person in front of Magistrate at the time of the dismissal where Ms. Davis had an opportunity to explain she thought she had come under the page limit? No, Your Honor. There was one hearing in person after Plaintiff filed the original complaint. And then Magistrate Judge North granted Plaintiff's motion for reconsideration after Plaintiff failed to oppose Chevron's third motion to dismiss. Plaintiff was given every opportunity, three times to amend the complaint, a motion to reconsideration that was granted and each time Magistrate Judge North warned that dismissal was imminent and provided clear, step-by-step, plead-by-numbers instructions and each one of those instructions were violated. The record is clear that Plaintiff had a clear record of delay and refusal to comply with the court orders. And this court in Jumonville v. Department of Treasury, which Judge Jones, you sat on the panel for, stated that enough is enough. She was... The Plaintiff was filing new complaints. I mean, maybe they didn't comply but it strikes me as a little bit different than these cases where orders are just being completely ignored in the sense that someone's not even responding with the filing. Respectfully, no, Your Honor. These cases, specifically Jumonville v. Department of Treasury, where this court found that the Plaintiff originally filed a 65-page complaint and was ordered to amend. Plaintiff then filed a 58-page complaint. The District Court ruled that the amended complaint was still too repetitive and verbose and warned that failure to comply with Rule 8 would result in dismissal of the action. Plaintiff filed a 36-page complaint. In dismissal, the District Court noted that Plaintiff had twice been given the opportunity to file a successive pleading and each time they remained prolix and unintelligible. The matter was dismissed with... Do you regard this final pleading as prolix and unintelligible and if so, why? Yes, Your Honor. For several reasons. With regards to the hostile work environment claim specifically where Plaintiff included 10 years worth of grievances to somehow make up a hostile work environment claim. There's several issues with that argument. And first, Plaintiff did not plead a hostile work environment claim as he was specifically instructed to do so by Judge North. Plaintiff has not identified facts supporting a facially plausible hostile work environment claim and all the cases that Plaintiff cited to in his brief do not support that position. All the cases that were cited by Plaintiff deal with summary judgment and liability based on the evidence. Judge North specifically addressed that in his February 18, 2020 order striking the complaint and Your Honor, that starts at record 231. But it sounds like you're saying the complaint doesn't state a claim. I mean, that's different than saying it's unintelligible. I mean, I read through the final pleading. I understood what the case is about. It's just about notice. Your Honor, Magistrate Judge North correctly found that the principle that relevant background should be considered as evidence is not a floodgate for incoherent rambling in federal pleadings about time-barred grievances. What's incoherent in the final complaint that was incoherent? I mean, it's not a work of art. Most complaints aren't. Your Honor, first, Plaintiff failed to plead his claims separately as he was instructed to do so. He failed to identify each actor and why his or her conduct was important giving rise to an actionable cause of action. Plaintiff repeats allegations that the court previously identified as petty and non-actionable grievances. Plaintiff applied the facts outside of the relevant statute of limitations for the hostile work environment claim despite not even asserting a hostile work environment cause of action. And of course, Plaintiff filed a 19-page complaint when specifically ordered to a 15-page limitation. To address the lesser sanctions because this court finds that dismissal under 41B is correct when the record establishes deliberate delay in consummation's conduct and lesser sanctions would be futile. To address the issue on timely service that, Your Honor, Judge Jones, you were asking about, with regards to no agent, first of all, this was not an issue that was raised on appeal. Plaintiff never objected or never raised this issue at the district court level and did not raise this issue at the appellate level. Which issue, excuse me? The timely service issue as a lesser sanction. Chevron North American Exploration Company is a trademark of Chevron USA. All the information about who to serve was listed on the Louisiana's Secretary of State database. And in fact, Plaintiff knew that information when he did, in fact, serve. But we're far past that problem at this point, aren't we? Yes, Your Honor. To go to the second point about whether Judge North correctly dismissed the matter under Rule 12b-6. Plaintiff cites to some cases in his pleadings that do not support the position that including all the relevant background is necessary. Specifically, he cites to Ramsey v. Henderson. Ramsey was decided on summary judgment. And in that context, it was an error to not consider relevant background information. In contrast, Your Honors, pleading a hostile work environment claim does not require all relevant facts. It doesn't require it, but does it prohibit it? I mean, if you've got allegations of a continuing pattern of harassment, I mean, whether that's the case here, that's the allegation, why wouldn't you put all that in your complaint, especially when there's a 12b-6 motion you filed and are pressing? I mean, you would want to put in the complaint all your best allegations of discriminatory harassment you suffered. I mean, you'd be negligent as a lawyer not to. Respectfully, Your Honor, plaintiff did not even plead a hostile work environment claim as instructed. And second— Okay, but I'm asking, your point is that they're not allowed to allege remarks that might help them at summary judgment. You acknowledge that. Yes, Your Honor. Although plaintiff included 10 years worth of petty facts that supported a facially plausible— I mean, his damages entitlement to recovery on page 17, admittedly past page 15, says that he has suffered distress and financial losses as a result of harassment, hostile work environment, retaliation, and so on. Yes, Your Honor. You're saying he didn't plead hostile work environment, certainly requesting relief for a hostile work environment, and he certainly suggests a lot of things. This is in retaliation, but again, I mean, we— it may not be elegant, but I think if you put it together, there's a lot of allegations from 2016 through 2017 leading up to his dismissal. Your Honor, regardless of whether or not plaintiff actually pled a hostile work environment claim, he still did not identify the facts that support a facially plausible hostile work environment claim. Magistrate Judge North wrote, plaintiff repackages stale factual matters as a long-running hostile work— I understand that, but tell us in plain— what should he have pled that he left out for hostile work environment? Your Honor, plaintiff was required to identify— Don't tell—don't read from the district. Tell me in your own words. Your Honor— If you were looking at this as a defense counsel or as a plaintiff, what would you have pled that he didn't plead? Your Honor, the— I'm not in the position of the plaintiff's counsel. I'm not going to write the complaint for him. No, there has to be a back—a what is required in a hostile work environment complaint that enables you to say this complaint is deficient and the district court means that he alleges all these things and they're not connected. Well, there's no doubt that he alleges a lot of race-baiting comments. Absolutely. You know, that one draws the conclusion from reading these that he's in a relatively small workspace that he has supervisors and this is all going on. I think he may actually allege that with their knowledge and acquiescence. Absolutely, Your Honor, and what plaintiff was required to do is to plead facts that support a causal link between his race, national origin, or protective activity, and the actionable adverse employment action. Well, now you're talking about two separate things. One of those is retaliation and the other one is adverse employment action, right? That's the standard that is put forth by the Fifth Circuit in order for a plaintiff to plead a Title VII cause of action. The plaintiff failed to provide the specific facts that provide that causal link. I thought a hostile work environment had to do with the conditions of working are so bad that no reasonable person would want to work there. Yes, Your Honor, and Judge North addressed that, that I won't remember his exact eloquent words, but that it's not a civility. Workplace is not for civility. Well, you know what? I mean, we have, you know, we probably have one or two cases where the mere existence of a noose in someone's locker has been sufficient to create a fact issue on hostile work environment, don't we? Your Honor, I'm not aware of any cases that speak specifically to that. Well, we've had them sort of going both ways, it seems, depending on the other circumstances. And here what you have is a series of about 12 things over a period of 12 months that gives a sense of some regularity to these remarks. Your Honor, the plaintiff, there are pleading standards, and plaintiffs did not comply with those pleading standards. The plaintiff identifies facts and individuals, but does not specifically allege any of how those actions or how those facts are related to it. I'm not commenting on the merits, of course, but moving on to the retaliation claim. He says, I filed my EEOC complaint in August of 2017. Chevron was notified a few weeks later. In October, the plaintiff was terminated. And as I understand it, Chevron's main response to that is, well, he was already on paid administrative leave. Well, that goes to causal connection as a matter of fact. Your Honor— But, otherwise, this is a prima facie case of retaliation, is it not? Respectfully, no, Your Honor. An adverse employment action is not being placed—the plaintiff has not pled an adverse employment action that is causally connected to the alleged discrimination. How can you say that from these pleadings? Because the plaintiff was on leave for eight months, as Your Honor correctly pointed out. I mean, that's not in his complaint. That's outside the complaint, is it not? I mean, there is an indication in the complaint that something was happening, that he was being challenged and forced to move to Venice instead of Galeano and overgrossed the helicopter when other people weren't penalized and so on, but there's nothing— it's— I just don't understand. With regards to the retaliation claim, the plaintiff has not identified an adverse employment action that was causally connected to his complaints of discrimination. The court correctly looked at this and specifically concluded that the allegations on their face do not raise a plausible inference that actual decision-makers took an adverse employment action based on race, national origin, or in retaliation for engaging in protective— We have a lot of case law that closeness in time doesn't win you the whole case. Certainly, it's summary judgment, but it does establish a prima facie case. Yes, Your Honor. I don't have the case site in front of me, but cases have found that four months is a sufficient time that does not support a claim for retaliation. And here— I think we have cases longer than that, but we can go look at the case. I thought there's cases up to eight months or so for the prima facie case, again, not for winning the entire case, but— This was one month. Respectfully, it was eight months, Your Honor, when he was first put on administrative leave. No, no, no, but that's not in the data that he completed, just EEOC— Who cares? Because the point is the timing for purposes of prima facie retaliation is when you're— when you filed your EEOC complaint and when you were fired, which is two months in this case at most, less than that if you take the date that Chevron was notified. Now, the fact that he was on administrative leave, I assume that to most employers, that means you may or you may not get reinstated. That is not the same as being fired, is it, in Chevron's terminology? Your Honor, I assume my time has expired. I'm asking you the question. Yes, ma'am. Thank you. The EEOC questionnaire indicating race discrimination was filed in June 2017. He was not terminated until December 2017. There's not a causal connection between the actual— there's not a plausible inference regarding the actual decision makers and the adverse employment action based on race or national origin or the plaintiff engaging in protected activity. There is no causal connection. And, Your Honors, under any of those three elements that I addressed in the beginning of my argument, under Rule 41B, under Rule 8A, and under 12B.6, district courts' decisions should be affirmed. Thank you very much. All right. Thank you. Your Honors, I must respectfully disagree with Chevron's position in this case. There is an absolute causal connection between the termination of Luis Sanchez and the filing of his EEOC complaint. As I stated previously, EEOC complaint was filed in August, that there was service of the EEOC complaint on September the 8th, and then on October— What's the difference? In June, actually, I think he first went in to file the complaint, file the questionnaire, but the actual complaint is not filed until August the 15th of 2017 and is not served on Chevron until September the 8th of 2017, so that's their point of knowledge of the filing of the complaint. More importantly, Your Honor, after the complaint was filed, even though he does not get notice until October, he gets notice October the 30th of 2017 that he is being terminated. The actual termination gave two months to him to say, but it's really not going to be until December, but I'm notifying you now that you're going to be terminated. So at that point, he knew that he was going to be terminated. More importantly, Your Honor, on November the 16th of 2017, Luis Sanchez received an email from a general named Ivan Redford. He was a fellow pilot and he informed Mr. Sanchez that in August and September of 2017, he attended meetings at Chevron in which the Chevron persons who were responsible for hiring and firing, Steve Judd, the Director of Logistics, Kevin Tose, the Aircraft Operations Manager with authority to hire and fire, had a discussion about Mr. Sanchez. In fact, Mr. Tose stated if I have my way, Luis Sanchez will never fly a Chevron helicopter again. Your Honor, that is so important and connected that there was a meeting held to discuss terminating this gentleman after Chevron received notice of the EEOC complaint. Council has also discussed that there was no hostile work environment case. However, Your Honor, the hostile work environment case was pled. The environment got so hostile at Chevron that in May of 2017, Mr. Sanchez found a note in his locker that said, leave our company and go back to Puerto Rico, you effing a-hole immigrant. At that point, even the EPA at Chevron agreed that his environment was so hostile that it was the EPA who actually recommended he go on administrative leave to get him out of the environment while they investigated the hostile work environment claim. He had every intent of returning to work, but because his time was running out to file an EEOC complaint, he had no choice but to go forward and file his EEOC complaint. He reluctantly filed that complaint because he knew that he would be retaliated against, but he filed it to protect his rights. Council says that there are three primary reasons why this case should not be reinstated. Your Honor, I respectfully submit there was no clear delay, there was no refusal to comply with court orders. I complied with every order of Rule 8 in drafting the pleadings. There is a separate retaliation claim and, Your Honor, the defendant alleged that she pointed out that it was in the May 8, 2020 order at record page 304 that retaliation was dealt with. This case was not dismissed by that order. This case was dismissed by the order of November 12, 2020, which is at record page 467, I want to say, 60-67, somewhere in that area. So, in the actual dismissal, he does not indicate anything about the retaliation claim the court completely overlooked it. Your Honor, at this time, I respectfully submit that the Plaintiff Through Counsel has not sought to intentionally delay the proceedings  authority and that this case should be reinstated. Thank you so much, Your Honor. I want to clarify one thing. That was my mistake. I'm looking at your amended complaint, and it says on June 28, 2017, the EEOC charge file indicates that a notice of charge of discrimination was sent to Chevron, but the formal charge was not filed until August of 2017, and it was not the notice of charge of discrimination was sent in September. So, you were both right, and the question is what that appears for pleading retaliation. Thank you, Your Honor. All right. Thank you very much. The court will be in recess until 9 o'clock tomorrow morning.